# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-11382

_____

JANE DOE,

                                                                           Plaintiff-Appellee,

*versus*

GEORGIA DEPARTMENT OF CORRECTIONS,
COMMISSIONER, GEORGIA DEPARTMENT OF CORRECTIONS,
ASSISTANT COMMISSIONER, OFFICE OF HEALTH SERVICES,
SHARON LEWIS,
Statewide Medical Director, in her official and
individual capacities,
DESHAWN JONES,
Phillips State Prison Warden, in his official and
individual capacities, et al.,

Defendants-Appellants,

MHM CORRECTIONAL SERVICES LLC, et al.,

Defendants.

————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-05578-MLB

————————

Before WILLIAM PRYOR, Chief Judge, and JORDAN and MARCUS, Circuit Judges.

PER CURIAM:

Plaintiff-Appellee, Jane Doe, is a transgender woman currently in the custody of the Georgia Department of Corrections ("GDOC") serving a sentence of life imprisonment. On December 6, 2023, she sued the GDOC and others (collectively, the "GDOC"), claiming that they were violating her Eighth Amendment constitutional rights by refusing to provide her medically necessary care to treat her gender dysphoria. The same day Doe filed suit in the district court, she filed accompanying motions, one seeking leave to proceed in the case anonymously and another seeking preliminary injunctive relief. In resolving these motions, the

district court issued a Pseudonym Order, granting Doe the right to proceed under a pseudonym, and a Preliminary Injunction Order, granting in part and denying in part her request for preliminary injunctive relief. The GDOC has filed an interlocutory appeal in this Court challenging both orders. The GDOC seeks to vacate both the district court's preliminary injunction and its pseudonym order. We will address that appeal in a separate opinion at a later date.

In the meantime, the GDOC has moved us to unseal the appellate record. While the parties hotly dispute whether we have jurisdiction now to review the district court's Pseudonym Order, there is no dispute that we have the power to decide a motion to unseal our own docket. "When presented with an appeal, [courts of appeals] routinely unseal documents that were sealed in the district court when those documents are used on appeal and there is no legal basis for sealing." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 518 n.3 (5th Cir. 2022); *cf. Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (noting the inherent powers "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962))). The GDOC's cross-motion to unseal only addresses the appellate record accompanying this interlocutory appeal. We consider this to be a matter of considerable immediacy and find it appropriate to address it now, separate from our consideration of the merits of GDOC's interlocutory appeal.

As we've long recognized, "[l]awsuits are public events." *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992). We view "'[t]he operations of the courts and the judicial conduct of judges" as "matters of utmost public concern'" because "'[t]he common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process.'" *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (first quoting *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978); and then quoting *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001)). This is especially the case in criminal trials where the public's right of access "plays a particularly significant role in the functioning of the judicial process and the government as a whole." *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 606, 610-11 (1982) (holding that a Massachusetts statute providing for the exclusion of the general public from criminal trials of specified sexual offenses involving a victim under the age of 18 violated the First Amendment). Public scrutiny "enhances the quality and safeguards the integrity of the factfinding process," and "permits the public to participate in and serve as a check upon the judicial process." *Id.* at 606. Moreover, "open proceedings may be imperative if the public is to learn about the crucial legal issues that help shape modern society." *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983). It is undeniable that "[i]nformed public opinion is critical to effective self-governance." *Id.* For these reasons, the Supreme Court has held that "a right of access to criminal trials in particular is properly afforded protection by the First Amendment." *Globe Newspaper Co.*, 457 U.S. at 605 (emphasis omitted).

In civil cases, the Federal Rules of Civil Procedure similarly provide that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). Just as in the criminal context, this requirement is more than some procedural formality; it reflects the First Amendment's "guarantees [that] are implicated when a court decides to restrict public scrutiny of judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. Aug. 1981).[1] So, whenever we consider whether to close some aspect of a judicial proceeding, we cannot do so lightly. *See id.* This is especially true when we are tasked with reviewing "civil trials" that "pertain to the release or incarceration of prisoners and the conditions of their confinement," which "are presumptively open to the press and public." *Newman*, 696 F.2d at 801. "If it is beneficial to have public scrutiny of criminal proceedings that may result in conviction and punishment," then it is surely beneficial to allow public access to civil proceedings that affect that punishment. *Id.*

Nevertheless, we've acknowledged that there may be compelling circumstances where it is appropriate to allow a party to proceed anonymously. After all, "[t]he public right to scrutinize governmental functioning . . . is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself." *Stegall*, 653 F.2d at 185. This is because at least sometimes party anonymity may not "obstruct the public's view of the issues joined

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

or the court's performance in resolving them." *Id*. Thus, the public's interest in a party's name, the who, sometimes may be far less significant than disclosing the how and the why surrounding the decisional process. We've said, for example, that "[a] party may proceed anonymously in federal court by establishing a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020) (citation omitted). A party seeking anonymity, however, bears the heavy burden of establishing that her privacy rights outweigh the powerful presumption of open judicial proceedings. *Id*. at 1247-48.

We have found, on occasion, a substantial privacy interest in cases involving mental illness, homosexuality, and transsexuality. *See Frank*, 951 F.2d at 324 (collecting cases). "[W]here the issues involved are matters of a sensitive and highly personal nature, such as . . . homosexuality . . . , the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter." *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979) (citations omitted). Sometimes "the social stigma attached to the plaintiff's disclosure was found to be enough to overcome the presumption of openness in court proceedings." *Frank*, 951 F.2d at 324.

The case before us -- which arises out of Doe's transgender status and her gender dysphoria treatment -- deals with information of the utmost intimacy. The facts, which are now part of this appellate record, describe Doe's struggles with gender

dysphoria, her LGBTQ+ status, her mental illness, her attempts at self-mutilation including self-castration, and multiple suicide attempts. In fact, the GDOC does not contest that this case deals with highly sensitive and personal information. Instead, it argues that Doe has forfeited any privacy right in this information by filing previous lawsuits that publicly revealed much of the same information at stake here.

We have studied this interlocutory record closely and are convinced that there remain sufficiently compelling reasons to allow Doe to proceed anonymously in this proceeding, and at this time. As everyone seems to agree, revealing Doe's identity in this interlocutory proceeding would compel the disclosure of deeply personal and private information associated with a high degree of social stigma. Moreover, the danger of physical harm appears to be real. We are particularly reluctant to unseal Doe's identity now because this cross-motion comes to us on appeal from a preliminary injunction order, on a preliminary record, and the district court is still hearing the bulk of the underlying case. The totality of the circumstances counsels that Doe should be allowed to proceed under a pseudonym in these interlocutory proceedings.

That being said, the public's right of access to judicial proceedings "includes the right to inspect and copy public records and documents." *Chicago Trib. Co.*, 263 F.3d at 1311. We recognize that this is a case pertaining to conditions of prisoner confinement and it is undeniable that the public has a powerful interest in the non-identifying information involved in these proceedings. Most

pertinently, the public has a strong interest in access to the transcript of the preliminary injunction hearing which, like much of the interlocutory record, has been filed in our docket under seal. Indeed, if the right to inspect judicial records is to mean anything, it must mean that the public has a right to review the evidence that led the district court to its preliminary conclusions, and that will undoubtedly inform this Court in addressing the matters now before us. Unsealing the materials on file in our Court but redacting the Plaintiff's name is consistent with the district court's Pseudonym Order and will not disturb the ability of the district court to conduct the ongoing proceedings as it sees fit.

Accordingly, while we conclude that it remains wise now to keep Doe's identity sealed, we can discern no sound reason to keep the full interlocutory record on file in our Court under seal. We, therefore, direct the parties to counsel with each other, review the materials that have been filed under seal in our Court, and file with us in an unsealed form the appellate record, after redacting from those materials Doe's name and such other information in the record that would reasonably identify her.

In short, the GDOC's motion to unseal the appellate record is GRANTED IN PART AND DENIED IN PART. The parties shall file an appropriately redacted version of the currently sealed record evidence within thirty (30) days of the date of this Order.